UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ELISEO JOSE ALEJANDRO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-02027-JPH-MKK |
| | ) | |
| SAMUEL OLSON Chicago Field Office | ) | |
| Director for Detention and Removal | ) | |
| Operations, Immigration & Customs | ) | |
| Enforcement, | ) | |
| TODD LYONS in his official capacity as | ) | |
| Acting Director of Immigration and | ) | |
| Customs Enforcement, | ) | |
| KRISTI NOEM Secretary of Homeland | ) | |
| Security, | ) | |
| PAMELA BONDI U.S. Attorney General, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PRELIMINARY INJUNCTION**

Petitioner Eliseo Jose Alejandro is a noncitizen who in 2001 crossed the

border from Mexico into the United States without authorization. He has lived

in the United States for approximately 24 years.

In late September 2025, Mr. Alejandro was living in Lafayette, Indiana,

with his family.  U.S. Immigration and Customs Enforcement ("ICE") was

alerted to Mr. Alejandro's presence in Indiana, determined he was not lawfully

in the United States, issued a Notice to Appear, and arrested him pursuant to

an ICE warrant.  Mr. Alejandro is detained pursuant to a federal statute that

requires his detention pending removal, that is, the statute does not allow for

an individualized determination of release on bond.

1

Mr. Alejandro has filed a petition for a writ of habeas corpus and motion for preliminary injunctive relief, arguing that his detention is unlawful. For the reasons that follow, the Court grants Mr. Alejandro's motion for a preliminary injunction, orders his immediate release, and enjoins Respondents from enforcing the mandatory detention statute against him.

## I.
## Background

### A. Factual Background

The following facts are undisputed based on the parties' filings. The parties agree that an evidentiary hearing is not necessary. Dkt. 16.

Petitioner Eliseo Jose Alejandro is a noncitizen who entered the United States in 2001, crossing the border from Mexico without inspection. Dkt. 1 ¶¶ 22; 30. He has lived in the United States for approximately twenty-four years. *Id.* He resides with his wife and has four biological children and four stepchildren, all of whom are U.S. citizens. *Id.* Prior to his detention, he was gainfully employed and was a member of a local church. *Id* ¶ 31.

On September 18, 2025, Mr. Alejandro was arrested by local authorities in Tippecanoe County, Indiana, on criminal charges that were later dismissed. Dkt. 11-1 at 2; dkt. 1-2.

Mr. Alejandro's arrest alerted ICE to his presence. Dkt. 11-1 at 2; dkt. 1-2. An ICE officer reviewed Mr. Alejandro's records and determined he was a citizen of Mexico without a legal basis to be in the United States. Dkt. 11-1 at 2-3.

On September 25, 2025, ICE interviewed Mr. Alejandro and confirmed that he did not enter the United States at a port of entry. *Id.* ICE issued Mr. Alejandro a Notice to Appear and arrested him pursuant to an ICE warrant that same day. Dkt. 11-2 at 6.

Mr. Alejandro was charged under 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.") and 8 U.S.C. § 1182(a)(7)(A)(l)(I) ("any immigrant at the time of application for admission— (I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible."). *Id.* 11-2 at 4.

On October 5, 2025, Mr. Alejandro filed a petition for writ of habeas corpus, dkt. 1, and two days later filed a motion for temporary restraining order and preliminary injunction, dkt. 9, arguing that ICE is unlawfully detaining him under 8 U.S.C. § 1225(b)(2)(A) because that statute does not apply to him.  Dkt. 1 at 2.  Mr. Alejandro requests that the Court enjoin Respondents from applying § 1225(b)(2) to him and order either his release or that Respondents provide him with a bond hearing under 8 U.S.C. § 1226(a). Dkt. 1 at 59.

On October 7, 2025, Respondents filed their response to the petition. Dkt. 11. Respondents argue that this matter is not ripe because Mr. Alejandro does not know if or how long he will be detained during the pendency of his removal proceedings. *Id.* at 7. Respondents also argue that various statutes, including 8 U.S.C. § 1252(g), § 1252(a)(5), § 1252(b)(9), and § 1252(a)(2)(B)(ii), divest the Court of jurisdiction. *Id.* at 8-14. Last, Respondents argue that Mr. Alejandro is an "applicant for admission" and is therefore properly detained under § 1225(b)(2). *Id.* at 14-17.

On October 8, 2025, the immigration judge held a hearing and denied Mr. Alejandro's motion for a bond hearing.  Dkt. 16.  Mr. Alejandro was initially detained at the Marion County Jail, dkt. 1 at 12, which is located in the Southern District of Indiana, but recently transferred to the Miami Correctional Facility, which is located in the Northern District of Indiana.  Dkt. 17 at 1.

On October 9, 2025, Mr. Alejandro filed a reply to return of order to show cause and brief in support of granting the writ of habeas corpus.  Dkt. 17.

Also on October 9, the Magistrate Judge held a telephonic status conference at which both Mr. Alejandro and Respondents were represented by counsel. *See* dkt. 16. Mr. Alejandro's counsel informed the Court that he went before an immigration judge on October 8, 2025, and requested bond but was denied. *Id.*

**B. Jurisdiction**

As a preliminary matter, the Court addresses Mr. Alejandro's recent transfer to the Miami Correctional Facility. Dkt. 17 at 1. Mr. Alejandro's relocation does not affect this Court's jurisdiction over his claims. In *In re Hall*, 988 F.3d 376 (7th Cir. 2021), the petitioner filed a habeas petition in the Southern District of Indiana but was transferred to a Florida facility while his petition was still pending. *Id.* at 377. The Seventh Circuit held that this District retained jurisdiction over the case. *Id.* at 379. While petitioner's *immediate* custodian is ordinarily the proper respondent in a habeas action, the Court applied a limited exception: "[W]hen the Government moves a habeas petitioner after [they] properly file[] a petition naming [their] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Id.* (quoting *Rumsfield v. Padilla*, 542 U.S. 426, 440–41 (1944)). There, the Court identified the Bureau of Prisons as that respondent. *Id.*

Here, no party disputes that Respondents, as agents of U.S. Immigration and Customs Enforcement and the U.S. Department of Homeland Security, have "legal custody" over Mr. Alejandro, and that the Court retains jurisdiction over those respondents. As such, there is a "respondent within the jurisdiction of th[is] . . . court that has the authority to comply with any order that may issue." *Id.*

Having concluded that Mr. Alejandro's present location outside of the Southern District of Indiana does not impact the Court's jurisdiction over Mr. Alejandro's petition, the Court turns to Respondents' jurisdictional arguments.

### i.    8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9)

Respondents argue that the Court lacks jurisdiction because of 8 U.S.C. § 1252(g) which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Supreme Court has interpreted this provision narrowly, rejecting the argument that the phrase "arising from" sweeps up every technically related action. *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Rather, its application is limited to the three enumerated circumstances, *id.*, none of which are presented here. Indeed, Respondents concede that habeas review is available when a petitioner seeks to challenge the legality of their confinement. Dkt. 11 at 11.

To the extent Respondents contend that Mr. Alejandro is challenging the "decision to detain"—a discretionary decision, *id.* at 10, 13—they are wrong. Mr. Alejandro is challenging the legality of his mandatory detention under § 1225(b)(2), which is a purely legal question separate from any discretionary decision to detain. His challenge is also entirely separate from any effort to seek "certain rights *in* his removal proceedings," dkt. 11 at 9 (emphasis added), so Respondents' arguments on that score also fail.

Respondents next point to 8 U.S.C. § 1252(b)(9) as a jurisdictional bar.  8 U.S.C. § 1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order . . . ."  Respondents argue that this language, in conjunction with § 1252(g)'s prohibitions, bars challenges to the "method" of commencing removal proceedings, i.e., detention decisions.  Dkt. 11 at 10.  However, *Jennings* explicitly rejected a similarly expansive view of § 1252(b)(9).  583 U.S. at 294. While acknowledging that, theoretically, legal questions related to detention "'aris[e] from' the actions taken to remove these aliens," the Court concluded that "this expansive interpretation of § 1252(b)(9) would lead to staggering results."  *Id.* at 293.  It would "cram[]" review of every collateral claim into review of the final removal order.  *Id.*  This would be "absurd" for multiple reasons; for example, final orders of removal do not issue for every case, and even when they do, many harms would be complete and irreversible at that point.  *Id.*; *see also Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 482 (1999) (noting that there are many "other decisions or actions that may be part of the deportation process" but that are not prohibited from judicial review by § 1252(g)).  As such, Respondents' reliance on § 1252's jurisdictional limitations to preclude review here are unsuccessful. Mr. Alejandro does not seek to challenge Respondents' commencement of his proceedings, the adjudication of his case, or the execution of a removal order.  8 U.S.C. § 1252(g).

7

### ii.   8 U.S.C. § 1252(a)(2)(B)(ii)

Respondents argue that 8 U.S.C. § 1252(a)(2)(B)(ii) creates a jurisdictional bar.  That provision provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter *to be in the discretion* of the Attorney General or the Secretary of Homeland Security". (Emphasis added.)  Respondents note that § 1226(a)—the statute that Mr. Alejandro contends should apply to determine whether he should be detained—"clearly confers discretion" on immigration officials to keep Petitioner in detention.  Dkt. 11 at 13.  But that misses the core of Mr. Alejandro's argument.   Section 1252(a)(2)(B)(ii) may be a jurisdictional bar if he were asking this Court to review, for example, a discretionary bond denial under § 1226(a).[1]  But that's not the case here.  Determination of whether § 1225(b)(2) applies does not implicate 8 U.S.C. § 1252(a)(2)(B)(ii).[2]

### C. Ripeness

Respondents next argue that this matter is not ripe for judicial review because Mr. Alejandro does not know if or how long he will be detained during the pendency of his removal proceedings. Dkt. 11 at 7. Mr. Alejandro responds that regardless of whether a request for bond has been considered, this case is

---

[1] The government argues that since the Court would not have authority to affirm or reverse a bond denial, it lacks authority to "issue an order binding the IJ or BIA." Dkt. 11 at 12.  However, this Order does not compel action from either of those actors.
[2] Respondents also cite 8 U.S.C. § 1252(a)(5), though that provision applies only to judicial review "of an order of removal," which is plainly inapplicable here.

ripe for decision because he is being unlawfully held under 8 U.S.C. §
1225(b)(2)(A). *See* dkt. 17 at 8. Mr. Alejandro is correct that, regardless of the
procedural posture of his removal proceedings, the gravamen of his petition is
that he is being held contrary to law under 8 U.S.C. § 1225(b)(2)(A).
Respondents all but concede the point in their response by acknowledging that
Mr. Alejandro will not be given a bond hearing because § 1225 does not provide
for it. Dkt. 11 at 7, 14-17. And Petitioner was in fact denied a bond hearing on
October 8. Dkt. 16. So, it is clear from the record that, absent judicially
ordered relief, Mr. Alejandro faces ongoing *mandatory* detention pursuant to §
1225.

Respondents' argument that "the prospect of a noncitizen [found
deportable] ultimately avoiding removal was so remote that he had no liberty
interest meriting protection" is not well taken. *Id.* at 8 (citing *Parra v. Perryman*,
172 F.3d 954, 958 (7th Cir. 1999). In *Parra*, the petitioner had been convicted
of felony aggravated criminal sexual assault and was subject to mandatory
removal. *Id.* at 955. That case applied a different statutory provision that
requires such a convicted felon to be taken into custody and provides for
release only under a very narrow set of circumstances, none of which applied.
*Id.* at 956. Similarly, the government cites *Demore v. Kim*, 538 U.S. 510 (2003),
for the proposition that the Supreme Court has never held detention during
removal proceedings to be unconstitutional. Dkt. 11 at 18. Like *Parra,* that
case, however, was also confined to review of detention pursuant to § 1226(c),
which only applies to certain criminal aliens, and which is not applicable

here—Respondents do not contend that Mr. Alejandro has a conviction that brings him within the scope of those statutes. *Parra* and *Demore* do not apply here.[3]

Accordingly, the Court finds that the petition presents a "concrete dispute[] between adverse parties." *Sweeney v. Raol*, 990 F.3d 555, 559 (7th. Cir 2021).

## II.
## Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90. "The two most important considerations are likelihood of success on the merits and irreparable harm." *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023). The third and fourth elements merge when the government is the Respondent. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

---

[3] This section of Respondents' brief also argues that detention during removal proceedings is lawful, so any suggestion that it is "unconstitutionally prolonged or 'indefinite'" at this point is premature. Dkt. 11 at 7–8. That misses the point. The core of Mr. Alejandro's argument is that irrespective of duration, his detention is unlawful because Respondents are holding him pursuant to a statute with mandatory, non-discretionary detention that doesn't apply to him.

### III.
### Discussion

#### A. Likelihood of success on the merits

Mr. Alejandro argues that his detention pursuant 8 U.S.C. § 1225(b) is unlawful because that law does not apply to him.  Dkt. 1 at 37.  This presents an issue of statutory interpretation, so the Court's analysis begins with the text of the statute. *See Lackey v. Stinnie*, 604 U.S. 192, 199 (2025).

#### i. Statutory framework

Two statutory sections govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. §§ 1225 and 1226. Section 1225 governs the detention of noncitizens seeking admission into the United States. *See Jennings*, 583 U.S. at 289.  In relevant part, § 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).  Absent a narrow exception for humanitarian relief, "detention under § 1225(b)(2) is considered mandatory . . . [and] [i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025); 8 U.S.C. § 1182(d)(5)(A).

While § 1225 "authorizes the Government to detain certain aliens *seeking admission into the country*," § 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal

11

proceedings." *Jennings*, 583 U.S. at 289 (emphasis added). Section 1226(a) sets out the "default rule" for noncitizens already present in the country. *Id.* at 281. It provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . .  [T]he Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond . . . ; or
> (B) conditional parole . . . .

8 U.S.C. § 1226(a). "Section 1226(a), therefore, establishes a discretionary detention framework." *Lopez Benitez*, 2025 WL 2371588, at *3 (internal citations omitted). An immigration officer makes the initial determination to either detain or release the noncitizen, but after that decision has been made, the noncitizen may request a bond hearing before an immigration judge. 8 C.F.R. § 1236.1(c)(8), (d)(1). At any such bond hearing, "the burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.' " *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

### ii. Section 1225(b)(2)(A) does not apply to Petitioner

Respondents argue that § 1225(b)(2)(A) applies because Mr. Alejandro is an "applicant for admission." *See* dkt. 11 at 14-17. The statute defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a

designated port of arrival . . . )." 8 U.S.C. § 1225(a)(1). Respondents rely on

*Dep't of Homeland Sec'y v. Thuraissigiam*, 591 U.S. 103, 108–109 (2020), for

the proposition that all unadmitted aliens present in the United States are

"applicants for admission." *See* dkt. 11 at 14.  In that case, the Court held that

a noncitizen apprehended 25 yards from the border and seeking admission as

an asylee was not entitled to habeas relief.  *Thuraissigiam*, 591 U.S. at 107.

The legal and factual context in *Thuraissigiam*, however, are different from

those presented here.  *Thuraissigiam* makes the distinction clear:

> While aliens who have established connections in this country have
> due process rights in deportation proceedings, the Court long ago
> held that Congress is entitled to set the conditions for an alien's
> lawful entry into this country and that, as a result, an alien at
> the threshold of initial entry cannot claim any greater rights under the
> Due Process Clause. Respondent attempted to enter the country
> illegally and was apprehended just 25 yards from the border. He
> therefore has no entitlement to procedural rights other than those
> afforded by statute.

*Id.* (internal citations omitted).

Respondents also rely on two district court cases, *Vargas Lopez v. Trump*,

2025 WL 2780351 (D. Neb. Sept. 30, 2025), and *Pena v. Hyde*, 2025 WL

2108913, *2 (D. Mass. July 28, 2025). In addition to not being binding

precedent, those cases are factually distinguishable from the facts here. In

*Vargas Lopez*, the court's holding was based primarily on the absence of a

warrant, which precluded the application of § 1226.  2025 WL 2780351 at *7.

But here, ICE issued and served a warrant.  Dkt. 11-2 at 6.  Still, the *Vargas*

*Lopez* court did appear to accept the government's argument in the alternative.

2025 WL 2780351, at *2.  The court's reasoning drew heavily from *Matter of*

13

*Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), a non-binding decision that—deviating from longstanding practice—endorsed detentions pursuant to § 1225(b) rather than § 1226(a). In *Pena*, the petitioner did not appear to raise § 1226 and instead relied on an approved I-130 petition to support his adjustment of status. 2025 WL 2108913, *2.

Respondents' argument that § 1225(b)(2)(A) applies to all noncitizens present in the United States without admission is unpersuasive. Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. Other district courts have reached a similar conclusion.[4]   Respondents have not identified any

---

[4] *See, e.g.*, *Belsai v. Bondi, et al.*, No. 25-cv-3862 (KMM/EMB), 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Giron Reyes v. Lyons*, No. C25-4048-LTS-MAR, --- F.Supp.3d ---, 2025 WL 2712417 (N.D. Iowa Sept. 23, 2025); *Salazar v. Dedos*, No. 1:25-cv-00835-DHU-JMR, 2025 WL 2676729 (D. N.M. Sept. 17, 2025); *Vasquez Garcia v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Aguilar Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Rocha Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted* 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2267803 (S.D.N.Y. Aug. 8, 2025); *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *9 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025).

binding authority finding that § 1225(b)(2)(A) applies to noncitizens like Mr. Alejandro who have been present in the United States for many years.

### a. Plain meaning

Respondents argue that § 1225(b)(2)(A) applies to all noncitizens who did not lawfully enter, regardless of how long they have lived in the United States or whether they have taken any affirmative step to seek admission. Dkt. 11 at 15–16. Respondents' interpretation ignores the plain meaning of the phrase "seeking admission." *Martinez v. Hyde*, No. 25-Civ-5937-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025). As the court in *Lepe* noted, "seeking" means "asking for" or "trying to acquire or gain" and implies some kind of affirmative action on the part of the applicant. 2025 WL 2716910, at *5 (citations omitted). The term "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "Entry" has long been understood to mean "a crossing into the territorial limits of the United States." *Matter of Ching and* Chen, 19 I&N Dec. 203, 205 (BIA 1984) (citing Matter *of Pierre,* 14 I & N Dec. 467, 468 (BIA 1973)). The phrase "seeking admission," accordingly, means that a noncitizen must be actively "seeking" "lawful entry." *See Lopez Benitez*, 2025 WL 2371588, at *7.

Here, Mr. Alejandro is not actively "seeking" "lawful entry" because he entered the United States over 20 years ago. *Lopez Benitez*, 2025 WL 2371588, at *7; *see also Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("'[S]eeking admission' implies action

– something that is currently occurring, and in this instance, would most logically occur at the border upon inspection."). Respondents also argue, however, that he is *now* seeking admission "because he has not agreed to depart, [and] he has not yet conceded his removability or allowed his removal proceedings to play out." Dkt. 11 at 16. But Respondents do not explain how Mr. Alejandro's inaction—not agreeing to depart; not conceding removability— shows that he is "seeking admission."

Respondents' arguments also disregard the context of §§ 1225 and 1226 and the broader statutory framework. As the Supreme Court noted in *Jennings*, § 1225 applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. Section 1225 "authorizes the Government to detain certain aliens *seeking admission* into the country," whereas § 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.*, 583 U.S. at 289 (emphasis added).

### b. Statutory context

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803 (1989). Considering § 1225 alongside § 1226 demonstrates that the most natural interpretation of § 1225 is that it applies to aliens encountered as they are attempting to enter the United States or shortly after they gained entry

16

without inspection. Section 1225 repeatedly refers to aliens entering the country. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly addresses "crewm[e]n" and "stowaway[s]", reflecting that § 1225(b)(2) applicants for admission are arriving aliens. In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports.

In sum, § 1225's structure shows that it applies to aliens arriving to the United States rather than aliens like Mr. Alejandro who are already present in the United States.

### c. No statutory surplusage

Moreover, courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). Adopting Respondents' reading would find recent congressional enactments superfluous. Congress passed the Laken Riley Act to amend § 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens not admitted into the United States

who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act.[5]

### d. Prior usage and interpretation

Respondents previously applied § 1226(a) to noncitizens, such as Mr. Alejandro, who entered the country without admission. *See Hurtado*, 29 I&N Dec. 216 n.6. ("We acknowledge that for years Immigration Judges have conducted [§ 1226(a)] bond hearings for aliens who entered the United States without inspection."); *Martinez*, 2025 WL 2084238, at *6. While interpreting the meaning of a statute belongs to the "independent judgment" of the courts, " 'the longstanding practice of the government'—like any other interpretive aid—'can inform [a court's] determination of what the law is.' " *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86 (2024) (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014)). Here, the government's longstanding practice, under which § 1225(b)(2)(A) would not have applied to Mr. Alejandro's circumstances,

---

[5] Notably, Petitioner was also arrested on a warrant, dkt. 11-2 at 6, which is mandated for detention by § 1226 but not § 1225. *See* 8 U.S.C. § 1226(a). The Court acknowledges that ICE's continued service of warrants may simply be a holdover from its prior stance on § 1226's application, so this fact is not given great weight. However, it is still evidence that the Petitioner's arrest and detention are more aligned with § 1226 than § 1225.

is consistent with the text and statutory scheme. *See, e.g.*, *Lopez Benitez*, 2025 WL 2371588, at *8 (reaching same conclusion).

In sum, Mr. Alejandro is likely to succeed on the merits of his claim that he is not subject to section 1225(b)(2)(A) and that application of that statute to him is unlawful.

### B. Irreparable harm absent relief

Mr. Alejandro is being subjected to ongoing civil confinement. There are only narrow, nonpunitive circumstances under which a special justification authorizes such restraint. *Zadvydas*, 533 U.S. at 690. The removable status of an alien, standing alone, does not qualify. *Id.* at 691–92. Respondents, nevertheless, contend that "detention alone is not an irreparable injury." Dkt. 15 at 2. The case upon which Respondents rely for this assertion, *Reyes v. Wolf*, No. C20-0377JLR, 2021 WL 662659, at *3 (W.D. Wash. Feb. 19, 2021), *aff'd sub nom. Diaz Reyes v. Mayorkas*, No. 21- 35142, 2021 WL 3082403, *3 (9th Cir. July 21, 2021), however, addresses a situation in which the petitioner actually received a bond hearing and was attempting to challenge the immigration judge's assessment of the evidence of her past criminal conviction. *Id.* Here, the statute being applied to Mr. Alejandro requires mandatory detention, so *Reyes* is not analogous.

Here, Mr. Alejandro has been in the United States for approximately twenty-four years. Dkt. 1 ¶ 22. He resides with his wife and has four biological children and four stepchildren, all of whom are U.S. citizens. *Id.* Prior to his detention, he was gainfully employed and was a member of a local church. *Id.*

19

There is no evidence in the record that he has been convicted of any crimes or that he is a risk of flight or a danger to the community.  He therefore would likely be considered a strong candidate for release on bond.  So, based on the facts and circumstances presented in this case, protracted civil detention clearly threatens irreparable harm to Mr. Alejandro. This factor weighs heavily in favor of a preliminary injunction.

### C. Balance of equities and public interest favor requested relief

The balance of the equities and considerations of the public interest are typically distinct, yet they merge when the federal government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418 (2009). How much weight these factors are given in context specific. *Compare Noem v. Vasquez Perdomo*, 2025 WL 2585637, at *1 (Sept. 8, 2025) (mem.) (Kavanaugh, J., concurring) ("Particularly in 'close cases,' the Court also considers the balance of harms and equities to the parties, including the public interest." (quoting *Hollingsworth v. Perry*, 558 U.S. 183, 190, (2010) (per curiam))), *with NetChoice LLC v. Fitch*, 145 S. Ct. 2658 (2025) (Kavanaugh, J., concurring) (even though law was "likely unconstitutional," application to vacate stay should be denied because petitioner failed to "sufficiently demonstrate[ ] that the balance of harms and equities favors it").

As already discussed, Mr. Alejandro's interest in receiving a bond hearing is significant and the Court has jurisdiction of his petition. The Court acknowledges that Respondents have a considerable interest in controlling the presence of aliens in this country. *See Dep't of State v. Munoz*, 602 U.S. 899,

911–12 (2024) ("[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens.").]  A preliminary injunction in Mr. Alejandro's favor, however, would merely prevent Respondents from applying Section 1225(b) to Mr. Alejandro based on the specific facts presented here.

### D. Remedy

The purpose of a preliminary injunction is to return the parties to the status quo ante, which "does not mean the state of things the moment a party files suit; it means the 'last peaceable uncontested status existing between the parties before the dispute developed.' " *K.C. v. Individual Members of Med. Licensing Bd. of Indiana*, No. 23-2366, 2024 WL 1212700, at *3 (7th Cir. Mar. 21, 2024) (citations omitted).

Respondents deny that Mr. Alejandro is detained under § 1226 and do not argue that he presents a flight risk or danger to the community. Mr. Alejandro has shown a likelihood of success on his claim that § 1225(b)(2)(A) does not apply to him. Given that Respondents do not assert any other basis for Mr. Alejandro's detention and do not argue that he presents a flight risk or danger, the appropriate remedy is his immediate release.

### IV.
### Conclusion

For the reasons explained above, Mr. Alejandro's motion for preliminary injunction, dkt. [9], is **GRANTED**, and the Court **ORDERS** Respondents to immediately release him.

The security bond requirement of Federal Rule of Civil Procedure 65(c) is **waived**. *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010) (recognizing that where the court is "satisfied that there's no danger that the opposing party will incur any damages from the injunction," the court may waive the bond requirement.). The government has not established a need to impose a security bond.

A preliminary injunction will issue by separate order.  Fed. R. Civ. P 65(d).

**SO ORDERED.**

Date: 10/11/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

22